## Case No. 14,805.

### UNITED STATES v. CLARK.

[34 Leg. Int. 312; 23 Int. Rev. Rec. 306; 13 Phila. 476; 6 Am. Law Rec. 129; 9 Chi. Leg. News. 427; 16 Alb. Law J. 224; 2 Cin. Law Bul. 220; 25 Pittsb. Leg. J. 17.] [1]

District Court, E. D. Pennsylvania. Aug. 27. 1877.

OBSTRUCTING PASSAGE OF MAIL — STOPPING PASSENGER TRAIN CARRYING MAIL—RES GESTÆ.

1. The act of congress [Act 1872; 17 Stat. 312] which makes it criminal to obstruct or retard the passage of the mail applies where the mail is carried by rail in a passenger train which is unlawfully stopped by persons who are willing to permit the passage of the mail car detached from the passenger cars of the train.

[Cited in Re Grand Jury, 62 Fed. 843.]

2. Words used by such persons may be act of obstruction when they constitute part of the wrongful business in question.

The defendant [Edward Clark] was indicted under section 3995, Rev. St., for knowingly and wilfully obstructing and retarding the passage of the mail and of the carriage carrying the same. The evidence on behalf of the prosecution was that the defendant was one of a number of persons who assembled at the depot of the Lehigh Valley Railroad at South Easton, in this district, on the

[1] [Reprinted from 34 Leg. Int. 312, by permission. 16 Alb. Law J. 224, contains only a partial report.]

morning of the 27th of July last; that on the arrival of the mail train from Mauch Chunk to Philadelphia, at the depot on that morning, the defendant, who had ,no connection with .the train, said to persons having charge of it, that the mail car could go on, but not the rest of the train; and that he afterwards got on the train and with others placed it in a siding, where it remained for several days.

Mr. Valentine. U. S. Dist. Atty., and Mr. Gilpin, Asst. U. S. Dist. Atty.

Benjamin L. Temple, for defendant.

CADWALADER, District Judge (charging jury). The defendant is charged with retarding the transportation of the mail. The first question is, whether anybody committed the offence; and the second question, whether the defendant participated in its commission. It would be convenient to consider those two questions separately. The mail, in point of fact, was retarded. as the postmaster testifies. two or three days. The occurrence which retarded it, according to the tendency of the proofs, was that several persons were assembled at the depot at Easton, for no lawful purpose, and that one or more of them declared that the mail might go on, but the passenger train should not. They uncoupled the mail, and afterwards coupled it for the purpose of carrying it, as they did, to a siding. If that was the fact. and their purpose was to retard the train which transported the mail, it matters not in point of law whether they were or were not willing that the mail car or baggage car, or the particular vehicle carrying the mail. should go on. I had occasion, a week ago, to define the law on that subject; and when I had reached my home in the evening I found that the afternoon mail had brought me the Chicago Legal News, containing Judge Drummond's opinion on the same subject; and although I cannot recollect the words which I used. the words are so nearly identical that I cannot now discriminate between what I said and what he said. The substance of it is that from the foundation of the government of the United States, under the present constitution, the mails have been carried in the same vehicles or trains which also transport passengers. The public authority, and no private person, regulates the method of transportation. As Judge Drummond said: "In relation to the transportation of the mails by means of railroads it is true that it appears by the evidence in this case that these defendants were willing that the mail car should go, but it must be borne in mind that the mail car can only go in such a way as to enable the railroad to transport the mail where there are other cars accompanying it. It is not practicable, as a general thing, for a railroad to transport a mail car by itself, because that would be attended by serious loss. so that while nomi-

nally they permitted the mail car to go, they really, by preventing the transit of other passenger cars, interfered with the transportation of the mails."

There is a familiar proposition of law that where a person is concerned in performing an unlawful act, he is responsible for other unlawful acts which he commits in the course of the wrong that he intends to commit. If a man intends to strike A with a stick. and he strikes B and breaks his head, he cannot get off by saying to B, "I did not mean to strike you, I meant to strike the other man." That the purpose was here not to delay the mail is of no importance if the act done was an unlawful act, and its effect was to retard the transportation of the mail. This question came before the judges of the supreme court of the United States about nine years ago. [U. S. v. Kirby], 7 Wall. [74 U. S.] 486. They said that if a man stops the mail when he is doing a lawful act, such as arresting a criminal who is a passenger, that is not obstructing the mail. The supreme court, however, added these words: "When the acts which create the obstruction are in themselves unlawful, the intention to obstruct will be imputed to their author, although the attainment of other ends may have been his primary object." These propositions are not disputed in the present case. I believe counsel candidly admitted the law to be so. But when we come to consider the facts presently, it will be found useful to have thus ascertained how the law is laid down. If you believe the evidence, there is, I think, no reasonable doubt that the offence in question was committed by somebody; that the transportation of the mail at this place, and from it, was unlawfully retarded.

Then the second and the main question is, whether the defendant was a guilty participant. If he participated in any wise intentionally in what brought about the result, he is guilty. It may become in this case material to define another rule of law, which is to determine when words spoken are acts. A witness who says a man did nothing, may nevertheless prove that he did something by words. It thus becomes important to know when spoken words constitute either acts of guilt or evidence of guilt. In some cases it is, in other cases it is not, a difficult question. In the present case I can state the rule in a simple and intelligible way, and it will be for you to apply it, or to reject its application. The rule is, that where words constitute part of the business, rightful or wrongful, which is in question, they are acts. If, therefore, one of the crowd there said, in defining their purpose, that the mail might go on but the passenger train should not. if such words were uttered when the transaction was in progress, and as a part of it, the man who uttered those words committed a wrongful act if the jury find that such was his intention. Let us apply the evidence in this case. But before

doing so I will make another discrimination, so as to simplify the question which we are ultimately to reach. It is contended by the defendant's counsel that, if, for any reason, whether for protection of the mail or any other cause, it was taken out of the car which was pushed into the cut, from that time there was no offence to be committed, that from that time the progress of the offence was ended. Consider that a moment. If, for the safety of the mail, or for the purpose of assorting it, or for any other purpose, it was temporarily taken out of the car, how is it the less retarded if the unlawful act prevented it from being taken back to the car and carried forward? Mr. Dawes, the postmaster, has testified that the mail was delayed three days. At what point of time was it delayed? Suppose somebody had gone and locked or unlocked the door in execution of the general design, would that not have been part of the act of delaying? The question, therefore, is, not where the mail was, but whether it was delayed.

And now we come to the particular evidence which is to determine the guilt or innocence of the present defendant. The weight of the evidence, I think, is in his favor on one point; and that is that the original uncoupling of the car had occurred before he reached the place. The witnesses on his part so testify; and although the apparent tendency of some testimony of witnesses for the prosecution was, as one would first listen to it, the other way, yet I see no necessary contradiction; and we may take it that according to the weight of the evidence he did not arrive there with his two companions until that part of the act committed was consummated. But that he was there before the car was wheeled to the siding, the evidence on this part tends also to prove; and if that is so, and, if Mr. Lewis is correct in stating, as he did twice in his evidence, that the defendant himself said that the mail car should go no further, then there is sufficient evidence in law for the conviction of this defendant, if you find it sufficient in fact. Mr. Lewis's testimony is distinct. He said: "I recollect the train; the 27th of July; when it came in a big crowd there mounted the train; said it should not go further; saw defendant there, heard him give orders, heard him say that the mail car should go but not the rest of the train." Whether that occurred before or after the actual taking out of the mail, if it was in part execution of the whole transaction, it retarded the mail for two or three days. If, I say, you find, without any reasonable doubt, that the words which Mr. Lewis has uttered here were really uttered by the defendant, and were uttered with the object and purpose of preventing, by intimidation or otherwise, the progress of the mail, then, as I said before, the evidence is sufficient in law, if it satisfies you in point of fact without any reasonable doubt. If you have any reasonable doubt you will give the defendant the benefit of it and acquit him; but if, as men of business, you have no reasonable doubt, you should find a verdict conformable to your real belief.

There is some evidence tending to show that, in ordinary times, persons mount these passenger trains, or other parts of the train, and perhaps also baggage and mail trains, in order to go from one side of the river in Pennsylvania to the other in New Jersey, and that is allowed without charge. If you believe that that was really the errand of this defendant, you should give him the benefit of it as a strong reason of presumption in his favor. But you should also recollect that, according to the evidence, there was a large crowd there, some of whom had already declared that the train should not proceed with the passenger part of it; and you will recollect that the period when, according to the evidence, this defendant mounted the train, if he did mount it, was after it had been declared that the train should go no further, and after it had been uncoupled, if you so find; but if you also find that he was a participant in moving it to the siding, whether the mail was in it or not, provided that part of the acts was in execution of the general purpose of retarding the mail, then that part of the evidence would be of much less importance. You will give it such weight as you think it is entitled to.

The district attorney states that I have made a mistake. He says that the mail, according to the evidence of Mr. Dawes, was sent on the same afternoon, that instead of being delayed two or three days it was delayed only say two or three hours. But that would make no difference in point of law if the evidence convinces you that it was willfully delayed. The main question, I think, for you, is, whether the defendant was one of those who declared, as Lewis testifies, that the passenger train should not go on though the mail train might.

The counsel for the defendant understood the evidence as though it were a regular thing to take the train to this cut or siding. If he is right, give the defendant the benefit of that view of the evidence. But the testimony is that the train was coupled after having been uncoupled, and that it was carried to the siding and left there.

I believe, gentlemen, I have said all that occurs to me as necessary.

The jury rendered a verdict of "Guilty."